New York | Paris
Northern California | Madrid
Washington DC | Hong Kong
São Paulo | Beijing
London | Tokyo

## Davis Polk

**Brian S. Weinstein**

Davis Polk & Wardwell LLP     212 450 4972 tel
450 Lexington Avenue          brian.weinstein@davispolk.com
New York, NY 10017

September 11, 2020

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Chen v. X Financial, et al.*, No. 1:19-cv-06908-KAM-SJB

Dear Judge Matsumoto:

We represent defendants X Financial ("XF" or the "Company"), Yue Tang, Shaoyong Cheng, Shengwen Rong, Zheng Xue, and Longgen Zhang (the "Individual Defendants" and, together with XF, the "XF Defendants") in the above-captioned action.  We, along with counsel for the Underwriter Defendants and Cogency Defendants,[1] respectfully write pursuant to Rule IV.B.1 of Your Honor's Chambers Practices and Magistrate Judge Bulsara's Minute Order dated May 22, 2020 to request a pre-motion conference for our anticipated motion(s) to dismiss the amended complaint (Dkt. No. 22) (the "AC") under Federal Rule of Civil Procedure 12(b)(6).[2]

***Background***.  XF serves China's online consumer finance sector.  Among other things, it facilitates loan transactions by operating an online platform that matches prospective borrowers with individual or institutional lenders.  (AC ¶¶ 2-3, 43, 62-65.)  It offers a suite of financing products, including a high-credit-limit unsecured personal loan product ("preferred loans") and a credit card balance transfer product ("card loans").  (*Id.* ¶¶ 9, 64.)  In September 2018, XF conducted its initial public offering ("IPO") of American depositary shares in the United States.  (*Id.* ¶¶ 1, 7.)

The AC alleges that the IPO offering materials ("OM") contained misstatements and/or omissions concerning primarily: (i) rising delinquency rates across XF's borrower base supposedly stemming from "relaxed" credit assessment standards; (ii) XF's reduction (and, ultimately, purported "discontinuance") of its preferred loan business in response to declining demand and sluggish performance; and (iii) XF's decision to lower the average "ticket size" of its card loans and implement stricter applicant screening procedures.  (*Id.* ¶¶ 143-64.)  It further alleges that the XF Defendants made additional misrepresentations regarding the same or similar matters in press interviews and earnings calls in the months following the IPO.  (*Id.* ¶¶ 176-94.)  Plaintiffs assert claims under Sections 11 and 15 of the Securities Act of 1933 ("1933 Act") and Sections 10(b) and 20(a) of the

---

[1] The "Underwriter Defendants" are Deutsche Bank Securities Inc. and Morgan Stanley & Co. LLC.  The "Cogency Defendants" are Cogency Global Inc., Richard Arthur, and Colleen A. Devries.  The XF Defendants, Underwriter Defendants, and Cogency Defendants are collectively referred to herein as "Defendants."  Other defendants named in the AC have neither been served nor appeared in this action.  Unless otherwise noted, all case citations herein omit internal citations, quotation marks, emphases and/or alterations.

[2] The parties have agreed to a proposed briefing schedule whereby opening memoranda would be due within 60 days of the pre-motion conference (or the Court's determination that no such conference is necessary), opposition memoranda would be due 60 days thereafter, and reply memoranda 30 days later.

Securities and Exchange Act of 1934 ("1934 Act").[3]  (*Id.* ¶¶ 208-41.)  Plaintiffs' claims are time-barred, deficient on the merits, or both.  The AC should be dismissed.[4]

***Plaintiffs' 1933 Act Claims Are Time-Barred***.  Plaintiffs' claims under the 1933 Act are subject to a one-year statute of limitations.  15 U.S.C. § 77m; *Pub. Emps. Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 714 F. Supp. 2d 475, 479 n.3 (S.D.N.Y. 2010).  A "corrective" disclosure that provides the very information supposedly misstated or concealed places the plaintiff on constructive notice of its claims and triggers the limitations period.  *See, e.g.*, *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 138-39 (2d Cir. 2013); *Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir. 2011).  The triggering disclosures need not "perfectly match the allegations that a plaintiff chooses to include in its complaint."  *Emerson v. Mut. Fund Series Tr.*, 393 F. Supp. 3d 220, 240 (E.D.N.Y. 2019).

This litigation commenced on December 9, 2019.  (Dkt. No. 1.)  Plaintiffs' own allegations, however, make clear that they were on constructive notice of their claims more than one year earlier.  As alleged in the AC, the primary "corrective" disclosures giving rise to Plaintiffs' claims were made on November 19, 2018 in XF's Q3 2018 earnings release and accompanying conference call (the "November 19 Disclosures") (*See, e.g.*, ¶¶ 91-95, 108-09, 125-127.)  The November 19 Disclosures advised investors (including Plaintiffs) that, among other things, XF: (i) had experienced spiking rates across delinquency buckets both quarter-over-quarter and year-over-year, requiring the Company to "tighten" its "credit policy" and "reject more [loan] applications"; (ii) had been "consistently reduc[ing]" and "scal[ing] down" its preferred loan business in response to rising delinquency rates and falling demand; and (iii) had "consciously reduced [its] average loan size" due to concerns over the "external economic environment and credit environment" in China, including lowering its average "card loan" size by "about 20%."  (Ex. B at 1; Ex. C at 2, 3, 5-6.)  The central premise of Plaintiffs' 1933 Act claims is the OM's alleged omission of these very issues. Accordingly, those claims are untimely.

***The AC Fails to Plead an Actionable Misstatement or Omission***.  First, the OM affirmatively disclosed the very information allegedly omitted.[5]  In a dedicated, up-front section on "Recent Developments," the Company warned investors of its struggles amidst turbulent economic and regulatory conditions in the months preceding the IPO, of corresponding declines in its user base, and that, as a result, its operational results and profitability could be "adversely affected" through the end of the year.  (Ex. A at 9-10, 28.)  The OM also advised that delinquency rates on "all outstanding loans" had consistently "increased" for years (and significantly over the prior two months), disclosed substantial upward trends in both preferred and card loan delinquencies specifically, and warned that delinquency rates could spike further and potentially require the Company to "impose more stringent borrower qualifications."  (*Id.* at 31, 101, 103-07.)  They also included data clearly showing that monthly preferred loan facilitation had decreased more than 45% by August 2018 relative to the first six months of the year, explained that preferred loan borrowers had been crunched by recent regulatory activity, and highlighted a shift in XF's product mix toward card loans.  (*Id.* at 8, 22, 26-27, 103-04, 118-19.)  Finally, the OM disclosed data demonstrating that the average size of XF's card loans had decreased substantially from the product's introduction in 2016, including a more than 10% drop-off in the month preceding the IPO (August 2018) relative to the first six months of the

---

[3] Plaintiffs voluntarily have dismissed additional claims brought under Section 12(a)(2) of the 1933 Act, which were asserted against the Underwriter Defendants.  (Dkt. No. 64.)

[4] A putative class action asserting substantially similar 1933 Act claims is pending in New York State Supreme Court. *See In re X Financial Securities Litigation*, Index No. 657033/2019 (N.Y. Cty.)   No submission in either of the two parallel actions is intended to waive any arguments and/or defenses that may be available to Defendants in the other action, including any defenses pertaining to personal jurisdiction, all of which Defendants hereby expressly reserve.

[5] Because "the entire [AC] sounds in fraud," *all* of Plaintiffs' claims—including those under the 1933 Act—must be pled with particularity.  *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (citing *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)); (*see also, e.g.*, AC ¶¶ 5-8, 16, 24, 40, 88, 138, 198 (alleging that Defendants designed a "false narrative" to "hid[e]" XF's true condition from investors)).

year.  (*Id.* at 8, 22-23.)  Securities claims fail where, as here, "they charge omissions of what was in fact disclosed."  *Hinerfeld v. United Auto Grp.*, 97-cv-3533, 1998 WL 397852, at *4 (S.D.N.Y. July 15, 1998).

Second, Plaintiffs cannot base claims on events occurring *after* the IPO—or never occurring at all. The securities laws require plaintiffs to, "at a minimum, plead facts to demonstrate that allegedly omitted facts both existed, and were known or knowable, at the time of the offering."  *Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 421 (S.D.N.Y. 2008).  Plaintiffs allege that Defendants failed to disclose that the Company decided pre-IPO to "phase out" (as opposed to merely scale back) preferred loans in their entirety.  (*See, e.g.*, AC ¶¶ 20, 161, 195.)  But that accusation is based on the Company's announcement nearly *eight months after* the IPO that it had decided to "discontinue" a portion of that business along with a statement from an anonymous former line employee that he "was told" by unidentified sources the month *following* the IPO that XF "was not going to be facilitating preferred loans any longer."  (*Id.* ¶¶ 86, 133.)  That is quintessentially impermissible "hindsight" pleading.  *See Lin*, 574 F. Supp. 2d at 421.  Plaintiffs also assert that XF "significantly relaxed" its loan applicant screening procedures in the lead-up to the IPO.  (AC ¶¶ 18, 154.)  That charge, however, is based *exclusively* on vague and uncorroborated statements by unnamed witnesses that XF's pre-IPO credit assessment was somehow "lax" or "less rigorous" than before and suggestions that one unidentified "manager" cryptically told one unidentified employee on one unspecified occasion to be "less detailed" and "comprehensive" in his credit reviews.  (*Id.* ¶¶ 77, 99, 117.)  None of this suffices to allege the systemic departure from credit assessment standards that Plaintiffs would have the Court infer.  *See Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283 (S.D.N.Y. 2019) (confidential witness allegations "so vague as to be meaningless").

Finally, Plaintiffs variously target undisputedly accurate disclosures of XF's past performance and statements of the Company's "belie[f]" in its ability to on-board quality borrowers, the "attractive[ness]" of its products, and its prospects for "continued growth."  (*See, e.g.*, AC ¶¶ 5, 88-90, 155-160, 162.)  But the former "do[] not become misleading even if less favorable results might be predictable by the company in the future."  *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 448 (S.D.N.Y. 2018).  And the latter are inactionable opinions, puffery, protected forward-looking statements, or some combination of all three.  *See, e.g.*, *In re Adient plc Sec. Litig.*, 18-cv-9116, 2020 WL 1644018, at *15-22 (S.D.N.Y. Apr. 2, 2020).

***Plaintiffs Fail to Raise a Strong Inference of Scienter***.  Section 10(b) of the 1934 Act requires allegations supporting an inference of fraudulent scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issuers & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  The gravamen of Plaintiffs' 1934 Act claims is that certain Individual Defendants, while *acknowledging* XF's struggles before and after the IPO, expressed undue "optimism" for the Company's future.  (AC ¶¶ 173-99.)  Plaintiffs vaguely suggest that these statements were "contradicted" by unspecified "adverse information" to which the speakers had access.  (*Id.* ¶ 195.)  It is black-letter law in this Circuit, however, that plaintiffs must "*specifically identify* the reports or statements" containing the allegedly contradictory information to plead scienter on that basis.  *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (emphasis added).  The AC fails to identify any such reports or statements "contemporaneous[ly]" contradicting the XF Defendants' disclosures.  *See, e.g.*, *In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 273 (S.D.N.Y. 2009).  That requires dismissal of the 1934 Act claims.

Respectfully submitted,

/s/

Brian S. Weinstein

Electronic Filing

4

cc:     All counsel of record (via ECF)